a verdict. But even if the stairway occupied a part of the sidewalk within the stoop line, it would not necessarily follow that it was a nuisance per se. If that were so, every stoop and every kind of projection from a house, which in any way encroached upon the sidewalk, would be a nuisance. The fact is that the streets in a city exist as much for the benefit of the occupants of the houses built along the sides of the streets as for the benefit of the general public, and that new streets are constructed from time to time, according to the demands of building necessities. The center of each street consists of a carriageway for the passage of vehicles, and on each side thereof is a sidewalk for the passage of pedestrians. The width of each street is fixed by law, and the common council of the city has power to regulate, by ordinance, the use of the streets and of the sidewalks. The only limitation upon this power is that any such ordinance shall not be inconsistent with law and the Constitution of the state. In the exercise of this power the common council has, by ordinances which have been repeatedly recognized by the Legislature, allowed on each sidewalk a so-called stoop line, which varies according to the width of the street, and within every such stoop line stoops, areas, and steps descending into the cellar or basement of a house, may be constructed in a certain manner and under certain regulations. The space thus usually occupied by any such appurtenance of a house, is withdrawn from that part of the sidewalk over which the public has the unrestricted right to pass and to repass, and consequently every such appurtenance stands upon a different footing than that occupied by a coalhole existing in that part of the sidewalk over which the right of public travel is wholly unrestricted. If, from the manner of its construction and its relation to that part of the sidewalk over which the unrestricted right of public travel exists, any such appurtenance is, or becomes, dangerous, the owner or occupant of the house may be liable for an injury caused thereby, notwithstanding he complied with the ordinances; but this is a question of fact, depending upon the circumstances of the particular case, and in every such case the burden is upon the plaintiff to establish that the appurtenance complained of is either a nuisance in fact or contrary to the ordinances. Even a stepping stone placed near the curb has been held not to be a nuisance per se. Du Bois v. Kingston, 102 N. Y. 219 [6 N. E. 273, 55 Am. Rep. 804]; Marrassy v. Mayor, 54 N. Y. Super. Ct. 432."

It follows, therefore, that the motion herein should be denied. Order signed.

---

(92 Misc. Rep. 653)

### In re ROBITSCHER'S ESTATE.

(Surrogate's Court, New York County. December 15, 1915.)

1. EXECUTORS AND ADMINISTRATORS ☞14—APPOINTMENT OF EXECUTORS.

A will made the testator's widow the principal legatee and sole executrix, and, if she did not survive the testator, created trusts for other persons. It named B. and two other persons as executors in case the wife did not survive the testator, "and not otherwise." The first codicil named F., in place of B., and declared that the will should be construed as though the name of F. were inserted therein, instead of the name of B. A second codicil stated that the testator was desirous that A. should be substituted as trustee and executor "in the place and stead" of F., and that "I do hereby make, constitute and appoint the said A. one of the executors and trustees of my said will and codicil." *Held* that, notwithstanding this last-quoted provision, the substitution of A. for F. was essentially of the same character as the substitution of F. for B., and where the widow survived the testator, received letters testamentary, and subsequently died, A. was not entitled to letters testamentary.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 29–31, 42; Dec. Dig. ☞14.]

2. EXECUTORS AND ADMINISTRATORS ⬳14—APPOINTMENT OF EXECUTORS.
    Where there is an uncertainty regarding the appointment of an execu-
tor, the intent of the testator must be shown, and slight expressions in
the will may suffice to determine such intent.
    [Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 29–31, 42; Dec. Dig. ⬳14.]

Application by Arthur M. Bullowa for letters testamentary on the
estate of Frederick Robitscher, deceased. Application denied.
    See, also, 168 App. Div. 915, 152 N. Y. Supp. 1140.

Emilie M. Bullowa, of New York City (Lawrence E. Brown, of New
York City, of counsel), for petitioner.

FOWLER, S. [1, 2] This is an application for letters testamentary.
The testator appointed his wife sole executrix. He then named Ben-
edict Joseph and two other persons, the appointment of all as execu-
tors to become effective in the event that his wife should die before
he did, "and not otherwise." In the first codicil he named Frederick
B. Joseph in place of Benedict Joseph, deceased, and declared that
his will should be construed as though the name of Frederick B. Joseph
were inserted therein instead of the name of Benedict Joseph. By
the second codicil he confirmed his will in all respects, in the event that
his wife survived him; he recited the previous change in executors,
stated that Frederick B. Joseph had died, and then in similar language
to that used in the first codicil provided as follows:

"I am desirous that Arthur M. Bullowa [the applicant] shall be substituted
as a trustee and executor of my said will in the place and stead of the said
Frederick B. Joseph, deceased, and I do hereby make, constitute and appoint
the said Arthur M. Bullowa one of the executors and trustees of my said
will and codicil."

The single clause above quoted, on which the applicant rests his con-
tention, is as follows:

"And I do hereby make, constitute and appoint the said Arthur M. Bullowa
one of the executors and trustees of my said will and codicil."

The will was probated in the year 1912. Letters testamentary were
issued to Esther Robitscher, widow of the testator. She acted as
executrix of the will until her death, which occurred in November,
1915. There is now no representative of the estate, and Arthur M.
Bullowa applies for letters testamentary. It is a well-established rule
that where there is an uncertainty regarding the appointment of an
executor the intent of the testator must be sought, and that slight ex-
pressions in his will may suffice to determine such intent. It is clear
that had Benedict Joseph survived the widow he would not have been
entitled to letters testamentary. If the widow survived, she was to
be the principal legatee and the sole executrix. If she did not survive,
other trusts were created and other executors and trustees appointed.
Had Frederick B. Joseph survived the widow, he could not have re-
ceived letters, as he was expressly named in place of Benedict Joseph.
It appears that the substitution of Arthur M. Bullowa for Frederick

B. Joseph was essentially of the same character as the substitution of the latter for Benedict Joseph. The single clause on which the applicant depends cannot be considered independently from the language immediately preceding it, which is similar to that used in filling the first vacancy. The testator merely made provision for the additional executors in the event that his wife should not survive him. He made no provision for the event of her death after receiving letters. The cases cited in support of the application I think are not in point. The proper course is to seek the appointment of an administrator with the will annexed.

Application denied.

(92 Misc. Rep. 650)

## In re BREESE'S ESTATE.

(Surrogate's Court, New York County. December 7, 1915.)

GUARDIAN AND WARD ⚖⇒13—APPOINTMENT—WHO MAY PETITION.

    Under Code Civ. Proc. § 2654, subd. 2, one authorized to act as guardian for infants within the county of the residence of the infants may apply for ancillary letters of guardianship. Under section 2655, ancillary letters of guardianship will be issued to the petitioner if the surrogate is satisfied that the case is within section 2654. The petitioner applied for ancillary letters of guardianship to issue to him and another person jointly. *Held,* that the letters could issue to the petitioner only.

    [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 40-52; Dec. Dig. ⚖⇒13.]

In the matter of the application for ancillary letters of guardianship in the estate of William Lawrence Breese and Hamilton Fish Breese, infants. Letters granted.

Marvin, Hooker & Roosevelt, of New York City, for petitioner.

FOWLER, S. This is an application for the grant of ancillary letters of guardianship to the petitioners as joint ancillary guardians. Under section 2654, subdivision 2, the application for ancillary letters must be made by the person authorized to act as guardian within the country where the infant resides. Section 2655 provides that if the surrogate is satisfied that the case is within section 2654, and "that it will be for the ward's interest that ancillary letters of guardianship should be issued to the petitioner," he may grant letters of guardianship accordingly. This section merely provides for the granting of letters to the petitioner, and not to the petitioner and another person jointly. There is no provision of the Code which authorizes the issuance of joint letters of guardianship in the Surrogate's Court.

The decree should provide for the issuance of ancillary letters to Julia Fish Breese.

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes